# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

TY THOMAS,

    Plaintiff,

v.

JAMES DZURENDA, *et al.*,

    Defendants.

Case No. 3:18-CV-0464-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

[ECF No. 44]

    This case involves a civil rights action filed by Plaintiff Ty Thomas ("Thomas") against Defendants James Dzurenda ("Dzurenda") and Martin Naughton ("Naughton") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 44, 46.)[2] Thomas opposed the motion, (ECF No. 48), and Defendants replied. (ECF No. 50.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 44), be granted.

## I. FACTUAL BACKGROUND

    Thomas is a former inmate in the custody of the Nevada Department of Corrections ("NDOC"). On October 1, 2018, Thomas filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Thomas was incarcerated at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 7.) Specifically, Thomas alleges an Eighth Amendment deliberate indifference to serious medical needs claim based on denial of treatment for Hepatitis C ("Hep-C"). (*Id.*)

    Hep-C is a blood borne pathogen transmitted primarily by way of percutaneous exposure to blood. Chronic Hep-C is diagnosed by a qualified medical practitioner.

---

[1]     This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]     ECF No. 46 consists of Thomas's medical records filed under seal.

Chronic Hep-C results in liver fibrosis. (ECF No. 44-4 at 2 (Declaration of Dr. Minev).) Fibrosis is the initial stage of liver scarring. (*Id.*) Chronic Hep-C builds up fibrosis (scar tissue) in the afflicted person's liver. (*Id.*) When the fibrosis increases, it can lead to cirrhosis of the liver, a liver disease that forestalls common liver function. (*Id.*) When liver cells are not functioning, certain clinical signs will appear on the patient, which include but are not limited to: (1) spider angiomata (vascular lesions on the chest and body); (2) palmar erythema (reddening of the palms); (3) gynecomastia (increase in breast gland size); (4) ascites (accumulation of fluid in the abdomen); and (5) jaundice (yellow discoloration of the skin and mucous membranes). (*Id.*)

Medical Directive ("MD") 219 governs treatment of Hep-C at the NDOC. (*See* ECF No. 44 at 5.) At the time Thomas filed his initial grievance related to his Hep-C treatment, inmates that tested positive for Hep-C were enrolled in the Infectious Disease Chronic Clinic for Hepatitis C. (*Id.*) A committee made up of at least three senior members of the medical department reviewed each Hep-C positive inmate and evaluated treatment options. (*Id.*)

A non-invasive method of procuring a patient's Chronic Hep-C progression, in addition with the clinical signs, is through the Aspartate Aminotransferase Platelet Ratio Index ("APRI") formula. (ECF No. 44-4 at 3.) To calculate a patient's APRI score, the patient's blood platelet count, which is obtained through a blood test, is necessary. (*Id.*) An APRI score is calculated using the AST to Platelet Ratio Index. (*Id.*) NDOC prioritized treatment based on an inmates APRI score. (ECF No. 44 at 5.) Inmates with an APRI score greater than 2 were prioritized for direct acting antiviral treatment ("DAA"). (*Id.*) DAA treatment, such as Epclusa, is an FDA-approved treatment for Hep-C. (ECF No. 44-3 at 16 (defining DAA).) Inmates with a score of less than 2 were not prioritized for the Hep-C DAA treatment protocols but did receive treatment and monitoring through the Hep-C Clinic. (ECF No. 44 at 5.)

The current version of MD 219 ensures each inmate has been or is tested for Hep-C, and that those inmates who test positive, and who do not make the voluntary choice

to opt out of treatment, will be treated with DAAs. (ECF No. 44-3 at 15-22.) The policy applies to all inmates unless there are medical issues that would make doing so cause more harm. (*Id.*) MD 219 established three priority levels for DAA treatment. This priority level system guarantees that all Hep-C patients will receive DAAs as needed and required to treat their condition, while at the same time providing medical personnel with discretion and flexibility to safeguard that those in a lower level of priority obtain expedited DAA treatment when in the sound judgment of the medical provider examining the patient it is determined that it is medically necessary. (*Id.* at 20.)

Thomas reports he was diagnosed with Hep-C shortly after entering the NDOC in 2001. (ECF Nos. 48 at 2; 48-1 at 2.) On April 21, 2018, Thomas filed a grievance asking for treatment for his Hep-C. (ECF No. 44-2 at 9.) The response to the grievance stated that Thomas's labs were within normal limits and Thomas did not qualify for treatment at that time. (*Id.* at 8.)

Thomas was enrolled in the NDOC Chronic Disease Clinic for Hep-C in November 2018 where he was regularly monitored and evaluated for a change in his condition. (*See* ECF No. 46-1 (sealed).) The enrollment form notes that Thomas's APRI score was 0.30 in February of 2018. (*Id.*; ECF No. 46-2 at 8 (sealed).) Blood tests conducted in February 2019 and June 2019 revealed Thomas's APRI scores were 0.19 and 0.22, respectively, and he did not exhibit any symptoms of decreased liver function. (ECF No. 46-2 at 7, 2-3 (sealed).) An abdominal sonogram conducted in February 2019 showed the liver was normal in size and slightly heterogeneous in echotexture with no liver masses noted. (ECF No. 46-4 at 2 (sealed).)

Thomas was approved for DAA treatment in December 2020. (ECF No. 46-3 at 2 (sealed).) An abdominal ultrasound conducted in February 2021 showed the liver was normal in size and echotexture with no liver masses noted. (ECF No. 46-3 at 6 (sealed).) A chronic disease clinic follow-up from March 8, 2021 notes Thomas was on Epclusa. (*Id.* at 5 (sealed).) Lab results dated July 22, 2021, show no detectable Hep-C in Thomas's blood. (ECF No. 46-6 (sealed).) Thomas has since been released from the NDOC.

Michael Minev, NDOC's current Medical Director, filed a declaration in support of the motion for summary judgment, stating as follows: if a patient's APRI score is above 0.5, there is likely some liver damage (fibrosis) and if the APRI score is above 1.5, the patient likely has or is quickly approaching cirrhosis of the liver. The APRI score is not definitive but is a reliable indicator of liver fibrosis. As part of his duties, Minev oversees the Chronic Hep-C treatment program at NDOC. He has reviewed test results and medical records of NDOC inmates to determine who required advanced forms of Hep-C treatment. In addition to APRI scores, Minev also considers the inmates' clinical signs of forestalled or reduced liver function. He almost always declined to recommend an NDOC inmate with Hep-C, who has an APRI score near or below 1.0 for advanced forms of Hep-C treatment due to risk that drug intervention may cause to a patient with Hep-C. All inmates who test positive for Hep-C and are otherwise medically indicated receive advanced treatment. (ECF No. 44-4.)

Moreover, as to Thomas specifically, Minev stated he reviewed Thomas's medical records and can attest that Thomas suffered from Chronic Hep-C and his APRI score, based on blood test results in June 2019, was 0.22. Thomas did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Based on Thomas's APRI score and lack of clinical signs indicating decreased liver function, Thomas was not a candidate for Hep-C treatment at the time of his grievance. (ECF No. 44-4 at 4.)

Defendant Naughton, Senior Physician for the NDOC, filed a declaration in support of the motion for summary judgment, stating Thomas has been under the continuous care of many doctors employed by the NDOC and has been seen and treated for various ailments over his time at NNCC. Naughton did not prescribe advanced treatment for Hep-C prior to 2021. Thomas's APRI scores at the time Naughton saw him ranged from 0.22 to 0.27, which is not an indication of advanced cirrhosis. Naughton has never diagnosed Thomas as suffering from advanced cirrhosis of the liver. Naughton never told Thomas that he was not treated due to the cost of treatment. Thomas's medical records do not

show evidence of (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice, which are indications of damage due to Hep-C infection. Naughton sent Thomas for a liver ultrasound in September 2021, which showed no acute sonographic abnormality, the liver was diffusely increased in echogenicity, or it appeared lighter on the sonogram than expected. However, this is not an indication of cirrhosis or other conditions related to Hep-C infection. Thomas was referred and received Epclusa treatment in January 2021. (ECF No. 44-5.)

Defendant Dzurenda, former NDOC Director, filed a declaration in support of the motion for summary judgment stating he never had contact with Thomas, nor was he aware of his condition. Dzurenda did not respond to any grievances on this matter. He was not part of any committee that could have ordered treatment to Thomas. The Medical Director of NDOC is responsible for care of the inmates. As Director, Dzurenda was not responsible for the formulation of Medical Directives and he had no authority to order Hep-C treatment for Thomas. (ECF No. 44-6.)

Deposition testimony from Defendant Naughton, medical doctor for the NDOC, states as follows: Naughton first saw Thomas regarding his Hep-C on October 2017 and he first discussed Hep-C treatment in April 2018. (ECF No. 48-2 at 14.) Thomas's APRI score as of April 2013 was 0.27 and as of June 2019 it was 0.22, which would not have made Thomas a candidate for DAA treatment under MD 21. (*Id.* at 15, 17.) Thomas's first fibrosis score was obtained in February 2020, which helps diagnosis the state of the liver. (*Id.* at 15-16.) Thomas had an abdominal ultrasound on February 28, 2019, and a consult with Digestive Consult Center in August 2020. (*Id.* at 16.) Naughton did not have an opinion as to whether Thomas was harmed by a delay in receiving DAA treatment. (*Id.* at 18.)

In support of his opposition to the motion for summary judgment, Thomas includes the expert report of Dr. Amanda Cheung. (ECF No. 48-3.) Dr. Cheung's report discusses the standard of care for Hep-C treatment. The summary of her report is as follows:

///

> Based on the review of the medical documents available on these six individuals, it is my opinion that Hep-C treatment was delayed. If these individuals were seen in the outpatient sector, treatment would have been recommended immediately upon diagnosis regardless of fibrosis staging. Currently, the purpose of fibrosis staging is to determine the correct type and length of therapy, rather than to determine whether to provide therapy.

(*Id.* at 7.) Dr. Cheung's report additionally states that "chronic Hep-C infection carries increased morbidity and mortality risk. Once there is progression to cirrhosis, patients may develop liver failure and liver cancer. Even after Hep-C cure, the risk of liver cancer persists. Thus, the ultimate goal is to achieve Hep-C cure prior to development of cirrhosis." (*Id.* at 6.) Importantly, Dr. Cheung's report does not address whether Thomas suffered any harm based on or because of the delay in treatment.

Finally, in support of his opposition, Thomas provides the deposition transcripts from Defendant Minev and from Defendant's expert, Dr. Chad Zawitz. (ECF Nos. 48-4, 48-6.) The depositions focus more generally on treatment of Hep-C and NDOC's policy but do not specifically address Thomas. (*See id.*)

## II.    PROCEDURAL HISTORY

On October 1, 2018, Thomas initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Thomas was incarcerated at NNCC. (ECF Nos. 1, 7.) On screening, the District Court permitted Thomas to proceed with his complaint which alleges an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants. (ECF No. 6.)

Around the same time Thomas filed his complaint, many other individuals in the custody of the NDOC filed similar actions alleging that NDOC's policy for treating Hep-C amounts to deliberate indifference in violation of the Eighth Amendment. (ECF No. 13.) As a result, the Court consolidated numerous actions, including Thomas's case, for the purpose of conducting consolidated discovery. (*Id.; see also In Re HCV Prison Litigation*, 3:19-CV-00577-MMD-CLB.)

Following an additional period of discovery, on June 30, 2022, Defendants filed their motion for summary judgment arguing Thomas cannot prevail as: (1) Thomas was

6

treated appropriately and in accordance with the medical directives and standards of care; (2) Defendant Dzurenda was not a treating physician and thus did not personally participate in the alleged constitutional violations; and (3) Defendants are entitled to qualified immunity. (ECF No. 44.) Thomas opposed the motion, (ECF No. 48), and Defendants replied. (ECF No. 50.)

### III.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

///

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury

could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### IV.   DISCUSSION

On June 30, 2022, Defendants filed their motion for summary judgment arguing Thomas cannot prevail as: (1) Thomas was treated appropriately and in accordance with the medical directives and standards of care; (2) Defendant Dzurenda was not a treating physician and thus did not personally participate in the alleged constitutional violations; and (3) Defendants are entitled to qualified immunity. (ECF No. 44.) In opposition, Thomas asserts that all Defendants denied him Hep-C treatment for years—a medically unacceptable course of treatment under the circumstances—and did so knowing the

excessive risks to his health. (ECF No. 48.)

### A. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105. Article 1, Section 6 of the Nevada Constitution mirrors the Eighth Amendment's Cruel and Unusual Punishment Clause, and provides protections that are coextensive with the Eighth Amendment of the United States Constitution. Courts in this district have applied the same legal standards to the cruel and unusual punishment corollary included in Article 1, Section 6 of the Nevada Constitution as are applied to the corollaries in the United States Constitution. *See, e.g, Fowler v. Sisolak*, No. 2:19-cv-01418-APG-DJA, 2020 WL 6270276, at *4 (D. Nev. Oct. 26, 2020).

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

**1.     Analysis**

Starting with the objective element, the parties agree that Thomas's Hep-C constitutes a "serious medical need." However, Defendants argue summary judgment

11

1    should be granted because Thomas cannot establish the second, subjective element of
2    his claim. Specifically, Defendants argue they were not deliberately indifferent to
3    Thomas's condition. Under the subjective element, there must be some evidence to
4    create an issue of fact as to whether the prison official being sued knew of, and
5    deliberately disregarded the risk to Thomas's safety. *Farmer*, 511 U.S. at 837. "Mere
6    negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th
7    Cir. 1998). Moreover, this requires Thomas to "demonstrate that the defendants' actions
8    were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d
9    1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th
10   Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in
11   relevant part* 658 F.3d 897 (9th Cir. 2011).

12          Here, as detailed above, Defendants submitted authenticated and undisputed
13   evidence regarding the medical treatment Thomas received while incarcerated related to
14   his Hep-C. (*See* ECF Nos. 46-1, 46-2, 46-3, 46-4, 46-5, 46-6 (sealed).) According to this
15   evidence, Thomas was enrolled in the NDOC Chronic Disease Clinic for Hep-C in
16   November 2018 where he was regularly monitored and evaluated for a change in his
17   condition. (*See* ECF No. 46-1 (sealed).) The enrollment form notes that Thomas's APRI
18   score was 0.30 in February of 2018. (*Id.*; ECF No. 46-2 at 8 (sealed).) Blood tests
19   conducted in February 2019 and June 2019 revealed Thomas's APRI scores were 0.19
20   and 0.22, respectively, and he did not exhibit any symptoms of decreased liver function.
21   (ECF No. 46-2 at 7, 2-3 (sealed).) An abdominal sonogram conducted in February 2019
22   showed the liver was normal in size and slightly heterogeneous in echotexture with no
23   liver masses noted. (ECF No. 46-4 at 2 (sealed).)

24          Thomas was approved for DAA treatment in December 2020. (ECF No. 46-3 at 2
25   (sealed).) An abdominal ultrasound conducted in February 2021 showed the liver was
26   normal in size and echotexture with no liver masses noted. (ECF No. 46-3 at 6 (sealed).)
27   A chronic disease clinic follow-up from March 8, 2021 notes Thomas was on Epclusa. (*Id.*
28   at 5 (sealed).) Lab results dated July 22, 2021, show no detectable Hep-C in Thomas's

blood. (ECF No. 46-6 (sealed).)

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively monitored and ultimately treated Thomas's Hep-C. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Thomas to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Thomas's opposition primarily focuses on MD 219 and his assertion that medical standards required immediate treatment. (ECF No. 48 at 8-10.) Thomas's opposition reiterates his claim, <u>without any admissible medical evidence</u>, that the delay in providing him treatment for his Hep-C caused him further damage—which Thomas asserts was anxiety about his Hep-C and pain. (*Id.* at 10.) To prove deliberate indifference, however, Thomas must show that a delay in treatment <u>caused</u> further injury. *See Jett*, 439 F.3d at 1096. Thomas's own expert witness does not allege that he sustained damage because of the alleged delay. (*See* ECF No. 48-3 at 7.) The expert's discussion of harm was in a general section relating to the standard of care, and not directed to Thomas specifically. (*Id.* at 6.)

Aside from his own assertions, Thomas provides no further evidence or support that a delay in treatment for his Hep-C <u>caused</u> him any damage. He has not come forward with evidence to show Defendants knew of an excessive risk to his health and disregarded that risk. The evidence before the Court shows Thomas was treated for his Hep-C through monitoring and other actions and there is no evidence showing that his Hep-C or any delay in providing treatment was <u>the cause</u> of any damage. Therefore, Thomas has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed,

or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744.

Moreover, to the extent that Thomas's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Thomas has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Thomas fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because Thomas has only shown that he disagrees between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his Hep-C monitored for progression.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to the medical deliberate indifference claim be granted.[3]

## V. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 44), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

---

[3] Because the Court finds that Thomas's claim fails on the merits, the Court need not address Defendants' personal participation or qualified immunity arguments.

**VI.    RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 44), be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: October 14, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**