UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| TY THOMAS, | Case No. 3:18-cv-00464-MMD-CLB |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| JAMES DZURENDA, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

Plaintiff Ty Thomas, who is an inmate at the Nevada Department of Corrections ("NDOC") and represented by counsel, brings this action under 42 U.S.C. § 1983 against Defendants James Dzurenda and Martin Naughton. (ECF No. 7.) Before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Carla L. Baldwin (ECF No. 51), recommending that the Court grant Defendants' motion for summary judgment (ECF No. 44 ("Motion"))[1] and close the case. Plaintiff filed an objection to the R&R.[2] (ECF No. 52 ("Objection").) As further explained below, the Court will reject the R&R, deny the Motion, and sustain Plaintiff's Objection[3] because there are genuine disputes as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs by delaying his Hepatitis C ("Hep-C") treatment and whether they personally participated in the alleged Eighth Amendment violation.

---

[1] Plaintiff responded (ECF No. 48) and Defendants replied (ECF No. 50) to the Motion. Defendants have also submitted sealed medical records in support of their Motion. (ECF No. 46.)

[2] Defendants responded to Plaintiff's Objection. (ECF No. 53.)

[3] The Court notes that Plaintiff did not explicitly address Defendants' personal participation and qualified immunity arguments in his Objection. (ECF No. 52.) However, Judge Baldwin declined to address these arguments in the R&R because she found that Plaintiff's claim failed on the merits. (ECF No. 51 at 14 n.3.) Thus, the Court will independently address the arguments in this order. *See* 28 U.S.C. § 636(b)(1).

## II. BACKGROUND

The Court incorporates by reference and adopts Judge Baldwin's description of the case's factual background and procedural history provided in the R&R. (ECF No. 51 at 1-7.)

## III. DISCUSSION

The Court will first reject the R&R and sustain Plaintiff's Objection because there is a genuine dispute of material fact as to whether Defendants were deliberately indifferent in treating Plaintiff's Hep-C. The Court will then deny Defendants' Motion as to the personal participation and qualified immunity issues because there are genuine disputes regarding Defendants' personal involvement in the alleged constitutional violation and whether they were deliberately indifferent to Plaintiff's serious medical needs.

### A.    Eighth Amendment Deliberate Indifference Analysis[4]

Plaintiff objects to Judge Baldwin's recommendation that the Motion should be granted as to Plaintiff's remaining Eighth Amendment deliberate indifference claim. (ECF No. 52.) In the R&R, Judge Baldwin found that Defendants affirmatively monitored and ultimately treated Plaintiff's Hep-C, and Plaintiff failed to provide sufficient evidence that the alleged treatment delay caused any damage. (ECF No. 51 at 13.) Plaintiff counters that the delay in treatment was medically unacceptable, caused severe scarring of his liver, and caused him to suffer painful Hep-C symptoms. (ECF No. 52 at 2-4.) The Court agrees with Plaintiff.

To establish an Eighth Amendment violation for deliberate indifference to an inmate's serious medical needs, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a

---

[4]The Court notes that after screening of the Complaint, only Plaintiff's Eighth Amendment deliberate indifference claim remains. (ECF No. 6.)

subjective standard—deliberate indifference."[5] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). To satisfy the subjective prong, the prison official must be "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists . . . [and] also draw the inference." *Peralta*, 744 F.3d at 1086 (citation omitted). The prison official is not liable if he knew of the substantial risk and acted reasonably, which is contingent on the circumstances that "normally constrain what actions a state official can take." *Id.* at 1082 (citation omitted).

When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Moreover, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment" is insufficient. *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (citations omitted). Instead, the plaintiff must show that the treatment course "was medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to plaintiff's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta*, 744 F.3d 1076).

To start, Plaintiff has presented sufficient evidence that raises a genuine dispute as to whether Defendants were deliberately indifferent to his serious medical needs and whether he was further harmed by the treatment delay. First and foremost, Plaintiff's medical records suggest that he suffered liver scarring due to the treatment delay. Plaintiff was diagnosed with Hep-C shortly after he entered the NDOC in 2001, but he did not receive direct-acting antiviral ("DAA") treatment[6] until 2021—approximately 20 years after

---

[5]The Court will focus its analysis on the subjective prong since the parties agree that Hep-C constitutes a serious medical need.

[6]According to Dr. Cheung, DAA therapy is a "highly effective and well-tolerated treatment" that became available in the United States in 2014 and was "a key development in curing" Hep-C. (ECF No. 48-3 at 5.)

the NDOC learned of his illness. (ECF Nos. 44-5 at 3, 48 at 2, 48-1 at 2, 52 at 2.) By February 2020, Plaintiff had reached a fibrosure score of F3.[7] (ECF Nos. 46-3 at 3, 48-1 at 2.) Fibrosis stage 3 is considered advanced or significant fibrosis (liver scarring), and the stage before cirrhosis (F4).[8] Although Defendants submitted some evidence of normal or unremarkable test results for liver function, Dr. Naughton, Plaintiff's medical provider, explained that a patient's fibrosis score remains the "most important" marker because it is "more accurate . . . in diagnosing the state of the liver" and agreed it is "a better indicator of how healthy the liver is." (ECF No. 48-2 at 15-16.) Thus, when viewed in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff suffered liver damage and advanced scarring due to the years-long treatment delay. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-51 (1986) (Summary judgment is not appropriate where reasonable minds could differ on the material facts at issue); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted) (In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party).

Next, Plaintiff contends that the treatment delay caused him to endure debilitating Hep-C symptoms for years that affected his quality of life. (ECF No. 52 at 7.) In his affidavit, Plaintiff attests under penalty of perjury that he has been in constant pain for

---

[7] According to Dr. Minev, the current NDOC Medical Director, chronic Hep-C causes liver fibrosis, which is the "initial stage of liver scarring." (ECF No. 44-4 at 2.) "Chronic Hep-C builds up fibrosis (scare tissue) in the afflicted person's liver." (*Id.*) When the fibrosis increases, it may lead to cirrhosis of the liver, which forestalls common liver function. (*Id.*)

[8] The Court takes judicial notice of the definition of the F3 fibrosis stage for Hep-C. *See Assessment of Liver Fibrosis Hepatitis C*, U.S. Department of Veterans Affairs, https://www.hepatitis.va.gov/hcv/liver-fibrosis.asp#S2X (last visited Feb. 2, 2023). This information is published on an official government website, is publicly available, is not subject to dispute, and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2); *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (citations omitted). Moreover, Dr. Minev explained that a F3 score could be late-stage fibrosis (liver scarring), and Dr. Naughton agreed that a F3 score indicates "fairly severe scarring." *See LeClair v. Dzurenda, et al.*, Case No. 3:19-cv-00404-MMD-CLB, ECF Nos. 34-1, 34-3 (D. Nev. Filed June 6, 2022).

1    over 20 years due to his untreated Hep-C, and has suffered from severe abdominal and
2    liver pain, jaundice, kidney stone, constipation, frequent fatigue, fevers, and pale stool.
3    (ECF No. 48-1 at 2.) *See Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)
4    (explaining that the nonmoving party may produce affidavits to show that a genuine
5    dispute exists). Moreover, Plaintiff states that the constant pain and doctor's visits caused
6    dark thoughts, severe emotional distress, and mental anguish. (*Id*.) Plaintiff's symptoms
7    are commonly found in individuals with Hep-C[9] and are supported by his medical records.
8    (ECF Nos. 44-4 at 2, 46-3 at 6, 46-5 at 4-5.). For instance, progress notes from 2019
9    indicate that Plaintiff sought medical assistance for hot, burning pain in his left upper
10   quadrant, abdominal pain and tenderness, and diarrhea. (ECF No. 46-5 at 4-5.) When
11   viewed in the light most favorable to Plaintiff, a reasonable jury could find that the years-
12   long treatment delay caused Plaintiff to endure painful Hep-C symptoms and that
13   Defendants knew of the substantial risks to Plaintiff's health, but still failed to act
14   reasonably. *See Kaiser*, 793 F.2d at 1103; *Peralta*, 744 F.3d at 1086.

15        The fact that Plaintiff finally received DAA treatment in 2021 and has no detectable
16   HCV in his blood does not change the Court's analysis. (ECF Nos. 46-6 at 2, 48-1 at 2.)
17   There remains a genuine dispute as to whether the harm Plaintiff sustained during the
18   years-long delay is reversible or permanent. Notably, Dr. Naughton did not form an
19   opinion as to whether Plaintiff was harmed by the treatment delay, which leaves this
20   question open for the jury to resolve. (ECF No. 48-2 at 18.) The record suggests that
21   when patients' Hep-C progress, some of the damage may be irreversible and they need
22   continued monitoring for certain illnesses. For instance, Renown doctors explained in a
23   letter to Dzurenda that "[i]f the window of opportunity to treat early in the disease process

---

[9]The Court takes judicial notice of common Hep-C symptoms. *See* Fed. R. Evid. 201(b)(2); *Lee*, 250 F.3d at 689; *Daniels-Hall*, 629 F.3d at 998-99. The Center for Disease Control ("CDC") explains that the signs and symptoms of acute Hep-C infection include fever, fatigue, dark urine, clay-colored stool, abdominal pain, loss of appetite, nausea, vomiting, joint pain, and jaundice. *See Hepatitis C Questions and Answers for Health Professionals*, CDC, https://www.cdc.gov/hepatitis/hcv/hcvfaq.htm#section1 (last visited February 2, 2023). Moreover, Dr. Minev confirmed that some of the aforementioned symptoms are found in patients with untreated Hep-C. *See LeClair*, ECF No. 34-3 at 7-8.

is missed, patients risk potentially irreversible complications such as vasculitis, cirrhosis, liver failure and cancer." (ECF No. 48-5 at 2.) Dr. Amanda Cheung,[10] Plaintiff's expert, likewise explained that "[e]ven after HCV cure, the risk of liver cancer persists." (ECF No. 48-3 at 6.) Most importantly, it is not the role of the Court to determine the truth of whether Plaintiff incurred lasting harm at summary judgment—the Court need only decide whether reasonable minds could differ on an issue when interpreting the record. *See Anderson*, 477 U.S. at 249, 255 (citation omitted); *Melnik v. Aranas*, Case No. 20-15471, 2021 WL 5768468, at *1 (9th Cir. Dec. 6, 2021) (finding that "the extent of the harm caused by the delay is a disputed question of fact not appropriately answered at [the summary judgment] stage"). Here, viewing the evidence in the light most favorable to Plaintiff, reasonable minds could differ as to whether Plaintiff sustained irreversible and lasting liver damage.

The Court is unpersuaded by Defendants' argument that Plaintiff's Hep-C treatment constituted a mere difference in opinion between Plaintiff and medical staff. (ECF No. 53 at 6.) *See Franklin*, 662 F.2d at 1344. Plaintiff provides sufficient evidence, where a reasonable jury could find that the treatment was "medically unacceptable under the circumstances," and in violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1058 (citation omitted). As explained above, Plaintiff suffered debilitating physical Hep-C symptoms for years and his disease had progressed to the F3 stage when he finally received DAA treatment—approximately 20 years after his initial Hep-C diagnosis. (ECF Nos. 46-3 at 3, 46-5 at 4-5, 48-1 at 2.) A reasonable jury could find that allowing Plaintiff's disease to progress to the advanced fibrosis stage while he suffered constant pain before providing him with life-saving treatment is "medically unacceptable" and "in conscious disregard of an excessive risk to plaintiff's health." *Id*.

Additionally, there is a genuine dispute as to whether NDOC's policy of prioritizing DAA treatment based on inmates' APRI scores contravened national and community

---

[10]Dr. Cheung is a board-certified doctor, "with subspecialty certifications in gastroenterology (2017) and transplant hepatology (2018)." (ECF No. 48-3 at 2.) Her practice includes "general hepatology and transplant hepatology patients." (*Id.*)

6

guidelines.[11] *See Balla v. Idaho*, 29 F.4th 1019, 1026 (9th Cir. 2022) (noting that the community standard of care outside the prison context is "*highly relevant*" in determining "what care is medically acceptable and unacceptable") (emphasis added, citations omitted). When Renown doctors compared NDOC Hep-C protocols with community standards and guidelines, they concluded that there was "room for improvement" and advocated for the testing and treatment of *all* Hep-C prisoners. (ECF No. 48-5 at 2-3.) The doctors specifically warned that NDOC's protocols "can lead to irreversible complications" and can potentially miss diagnoses for the majority of patients. (*Id*.) Dr. Cheung also opined that NDOC's treatment protocol was "dated" and would only have been reasonable *before* the advent of oral DAA therapies, which became available in 2014. (ECF No. 48 at 5, 7.) She states that DAA treatment is recommended to *all* individuals regardless of fibrosis stage unless the individual has an alternative chronic illness that could minimize life expectancy. (*Id*. at 6.) Thus, a reasonable jury could find that Defendants' Hep-C policy failed to meet community standards outside of prison and was medically unacceptable. *See Balla*, 29 F.4th at 1026; *Toguchi*, 391 F.3d at 1058.

Accordingly, the Court rejects Judge Baldwin's R&R, sustains Plaintiff's Objection, and denies Defendants' Motion.

///

///

///

///

---

[11]Medical Directive ("MD") 219 was the protocol that governed NDOC's treatment of Hep-C for inmates at the time of Plaintiff's grievance. According to Defendants, a "committee made up of at least three senior members of the medical department reviewed each HCV positive inmate and evaluated treatment options" and the "NDOC prioritized treatment based on an inmate[']s APRI score." (ECF No. 44 at 5.) Inmates with an APRI score below 2.0 did not receive priority for DAA treatment. (*Id*.) MD 219 has since been modified, where all inmates with Hep-C "who do not make the voluntary choice to opt out of treatment, will be treated with DAAs. This applies to all inmates unless there are medical issues that would make doing so cause more harm." (*Id*. at 6.)

### B.      § 1983 Personal Participation[12]

Next, Defendants argue that Dzurenda should be dismissed because he lacked authority to order medical treatment.[13] (ECF No. 44 at 10.) Plaintiff counters that Dzurenda and Naughton are liable because they either personally denied him Hep-C treatment, or they made and implemented harmful Hep-C policies that denied him necessary care. (ECF Nos. 7 at 3, 48 at 2-3, 10.) The Court agrees there is a genuine dispute regarding Dzurenda and Naughton's personal participation in the alleged Eighth Amendment violation.

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in original, citation omitted). A supervisor is liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation omitted); *see also Melnik*, 2021 WL 5768468, at *1 (citations omitted).

A defendant is also liable if he or she personally reviewed and responded to the plaintiff's grievance about the alleged constitutional deprivation, was aware of the plaintiff's condition and alternative recommendations, but still failed to prevent further

---

[12] As noted above, the Court will independently address Defendants' personal participation and qualified immunity arguments, as Judge Baldwin declined to address these arguments in the R&R because she found that Plaintiff's claim failed on the merits. (ECF No. 51 at 14 n.3.)

[13] It appears that Defendants only sought dismissal of Dzurenda on personal participation grounds. (ECF No. 44 at 10.) However, because a defendant is only liable under § 1983 upon a showing of personal participation, the Court will also address Naughton's personal involvement. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).

harm. *See Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014); *Snow*, 681 F.3d at 989. However, "merely denying a grievance without some decision-making authority or ability to resolve the underlying issue grieved is not enough to establish personal participation." *Countryman v. Sherman*, Case No. C19-01767-JCC-SKV, 2022 WL 17406341, at *10 (W.D. Wash. Oct. 21, 2022) (citations omitted).

To start, the Court finds that summary judgment should be denied for Dzurenda, the former NDOC Director until 2019, because there remains a genuine dispute as to his personal involvement. (ECF No. 44-6 at 2.) Although Defendants argue that Dzurenda had no authority to order medical treatment, the record suggests otherwise. (ECF No. 44 at 10.) Specifically, Plaintiff included a June 2019 letter from Renown doctors that was explicitly addressed to Dzurenda. (ECF No. 48-5 at 2.) In the letter, the Renown doctors claimed that they met with Dzurenda on May 30, 2019, to discuss NDOC's Hep-C treatment protocols. (*Id*.) The letter also outlined the protocol's flaws and the serious health consequences of delaying DAA treatment until an inmate's disease progressed. (*Id*. at 2-3.) Because this letter was addressed to Dzurenda—*not* the NDOC Medical Director, because Dzurenda personally met with the Renown doctors, and because the doctors specifically directed their recommendations to Dzurenda, a reasonable jury could infer that Dzurenda had the decision-making authority to order treatment or resolve the underlying issues with NDOC's Hep-C protocol. (*Id*.) A reasonable jury could also find that Dzurenda's failure to act, intervene, or remedy the protocol, despite his knowledge of its flaws, deprived Plaintiff of necessary DAA treatment and caused his disease to progress. *See Starr*, 652 F.3d at 1207 (citation omitted); *see also Melnik*, 2021 WL 5768468, at *1 (citations omitted). The Court therefore denies summary judgment in favor of Dzurenda.

Plaintiff also argues that Dr. Naughton personally participated in the Eighth Amendment violation. (ECF Nos. 7 at 3, 48 at 3, 9-10.) The Court agrees. Naughton was Plaintiff's NDOC doctor and began seeing him in October 2017. (ECF Nos. 44-5 at 2-3, 48-2 at 14.) Additionally, Naughton was a member of the Hep-C Committee, which

reviews inmates' medical information and approves them for Hep-C treatment or other diagnostic tests. (ECF No. 48-2 at 8-11.) In light of Dr. Naughton's own admissions and statements, a reasonable jury could find that he was aware of Plaintiff's Hep-C condition, aware that Plaintiff needed DAA treatment, had the authority to order such treatment as Plaintiff's direct medical provider and a member of the Hep-C Committee, but still failed to act to prevent harm. (*Id*. at 8-14.) *See Colwell*, 763 F.3d at 1070; *Snow*, 681 F.3d at 989. The Court therefore denies summary judgment in favor of Naughton.

### C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because other circuit courts have found that the failure to promptly provide inmates with specific treatment does not violate the Eighth Amendment. (ECF No. 44 at 12.) The Court disagrees.

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In deciding whether a government official is entitled to qualified immunity, the Court asks "(1) whether the official's conduct violated a constitutional right; and (2) whether that right was 'clearly established' at the time of the violation." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (citing *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc)). However, the Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

The Court will exercise its discretion and first address whether Defendants' conduct violated a constitutional right. *See id*. As stated above, there is still a genuine dispute of material fact as to whether Dzurenda and Naughton were deliberately indifferent to Plaintiff's serious medical needs under the Eighth Amendment. Therefore, it

is uncertain at this point whether they violated a constitutional right, and they are not entitled to qualified immunity at this time. Defendants' Motion is therefore denied.[14]

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiff's objection (ECF No. 52) to the Report and Recommendation of U.S. Magistrate Judge Carla L. Baldwin is sustained.

It is further ordered that Judge Baldwin's Report and Recommendation (ECF No. 51) is rejected.

It is further ordered that Defendants' motion for summary judgment (ECF No. 44) is denied.

It is further ordered that under LR 16-5, the Court finds that it is appropriate to refer this case to Judge Baldwin to conduct a settlement conference. If the parties do not settle, the Joint Pretrial Order is due within 30 days of the date the settlement conference is held.

DATED THIS 6th Day of February 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[14] The Court clarifies that the case will only proceed against Dzurenda and Naughton in their individual capacity. Plaintiff has already received his requested injunctive relief (DAA treatment), and a claim for monetary damages against an official sued in his official capacity is barred by the Eleventh Amendment. (ECF Nos. 46-6 at 2, 48-1 at 2.) See Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997).